UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREAT MIDWEST INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>OLAGUEZ, INC., *et al*.,<br><br>Defendants. | Case No. 1:25-cv-01571-CDB<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT IN PART PLAINTIFF'S UNOPPOSED MOTION FOR DEFAULT JUDGMENT<br><br>(Doc. 16)<br><br>ORDER REQURING PLAINTIFF TO TRANSMIT COPY OF FINDINGS AND RECOMMENDATIONS TO DEFENDANTS AND FILE PROOF OF SERVICE<br><br>**14-Day Deadline to File Objections**<br><br><u>Clerk of the Court to Assign District Judge</u> |

Pending before the Court is the motion for default judgment by Plaintiff Great Midwest Insurance Company ("Plaintiff") against Defendants Olaguez Inc., doing business as Olaguez Transport ("Olaguez Transport") and Johnny Olaguez ("Olaguez") (collectively, "Defendants"), filed on April 23, 2026. (Doc. 16). Defendants did not file an opposition to the motion. The Court convened for hearing on the motion on May 29, 2026. (Doc. 17). Counsel for Plaintiff Charles Cauffman appeared and Defendant Johnny Olaguez appeared on his behalf. *Id*.

///

///

## I. Background

### A. Plaintiff's Allegations and Evidence in Support of Default Judgment

According to the allegations of its complaint, Plaintiff "is an admitted surety insurer in the State of California, and issues surety bonds and lines of insurance in the course of its business." (Doc. 1 ¶ 5). Surety bonds issued by Plaintiff guarantee, among other things, the faithful payment and performance of construction contracts. (Doc. 16-2, Declaration of Natalie Mercandetti, ¶ 3).

Plaintiff alleges that on or about April 27, 2023, Plaintiff and Defendants entered into a General Indemnity Agreement ("GIA") in favor of Plaintiff for the issuance of bonds requested by Defendants. (Doc. 1 ¶¶ 9, 10). The terms of the GIA provide that Defendants are jointly and severally obligated to indemnify Plaintiff for any and all losses, costs, and expenses incurred in connection with Plaintiff's issuance of bonds on behalf of Olaguez Transport. *Id.* ¶ 9.[1]

Plaintiff issued surety bonds to Olaguez Transport in connection with construction work performed pursuant to a transportation agreement beginning in or about April 2023. (Doc. 1 ¶ 11; Mercandetti Decl. ¶ 7). Plaintiff alleges on information and belief that Olaguez Transport failed to pay certain subcontractors who performed work on the project that was subject of the transportation agreement. (Doc. 1 ¶ 12). Plaintiff received bond claim requests from Olaguez Transport's subcontractors and suppliers seeking payment for labor and materials supplied to the project subject to the transportation agreement. *Id.* ¶ 13; *see* (Mercandetti Decl. ¶ 11).

Plaintiff resolved the payment bond claims in the amount of $204,824.36 and has since recovered from one of the bond obliges a total of $74,008.51. (Doc. 1 ¶¶ 11, 15-16, Exhibit D). Accordingly, Plaintiff seeks to recover the outstanding balance of $130,815.85, which includes payments made to subcontractors and suppliers in connection with the claims paid on bonds issued by Plaintiff and consultants' fee incurred in connection with such claims. (Doc. 1 ¶¶ 16-18; Mercandetti Decl. ¶ 15). Pursuant to the terms of the GIA, Plaintiff also seeks $9,654.00 in

[1] In support of its motion for default judgement, Plaintiff includes a copy of the GIA in which Defendant Olaguez signs as the "President" of Olaguez Transport. (Mercandetti Decl., Exhibit A). Defendant Olaguez confirmed at the motion hearing that he is the president of Olaguez Transport. (Doc. 17). The GIA also is attached to the complaint. (Doc. 1, Exhibit A).

attorneys' fees and $754.50 in costs incurred in connection with its issuance of the bonds. (Doc. 1 ¶¶ 10, 20-21; Mercandetti Decl. ¶ 20).

**B. Procedural History**

On November 14, 2025, Plaintiff initiated this action against Defendants. (Doc. 1). On November 26, 2025, Plaintiff filed an executed proof of service of summons and complaint as to Defendant Olaguez Transport and Defendant Olaguez. (Docs. 6, 7). Defendants did not respond to the complaint, and the Clerk of the Court entered defaults against both Defendants on March 27, 2026. (Doc. 15).

At the hearing on Plaintiff's motion for default judgment, Defendant Johnny Olaguez attested under oath that he had received a copy of the summons and complaint. He requested additional time to obtain an attorney, due to no longer being acquainted with his previous attorney, who had waived service on behalf of Defendants. *See* (Docs. 8, 9, Waivers of Service). Without objection by Plaintiff, the Court ordered Defendants to complete any ongoing efforts to engage counsel and file any notice of appearance of counsel no later than June 5, 2026. (Doc. 17). The Court also ordered Defendants to file a response to Plaintiff's complaint no later than June 12, 2026, and admonished Defendant Olaguez that any failure to timely comply with the Court's order would result in the Court taking under submission Plaintiff's motion for default judgment. *Id*.

As of the date of this order – more than three months after the deadline passed for Defendants to file any notices of attorney appearance and to respond to the complaint – Defendants have failed to comply with the Court's order.

## II. Legal Standard

In general, "default judgments are ordinarily disfavored" because "[c]ases should be decided upon their merits whenever reasonably possible." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016) (quoting *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986)). Under Rule 55 of the Federal Rules of Civil Procedure, default judgment is a two-step process. *See Eitel*, 782 F.2d at 1471. Prior to entry of default judgment, there must be an entry of default. *See* Fed. R. Civ. P. 55. Upon entry of default, the factual allegations of the complaint, save for

those concerning damages, are deemed to have been admitted by the defaulting party. Fed. R. Civ. P. 8(b)(6); *see Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

Allegations regarding damages are not taken as true and must be independently proven. *Geddes*, 559 F.2d at 560. In addition, a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (quotation and citation omitted). "[I]t follows from this that facts ... not established by the pleadings of the prevailing party, or claims ... not well-pleaded, are not binding and cannot support the judgment." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

A district court has discretion to grant or deny a motion for default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *see TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987) ("Rule 55 gives the court considerable leeway as to what it may require as a prerequisite to the entry of a default judgment."). The Ninth Circuit has set out seven factors to be considered by courts in reviewing a motion for default judgment: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel*, 782 F.2d at 1471-72. Entry of default judgment is not appropriate where the second and third factors weigh against plaintiff. *See Mnatsakanyan v. Goldsmith & Hull APC*, No. CV 12-4358 MMM, 2013 WL 10155707, *10 (C.D. Cal. May 14, 2013) ("The fact that factors two and three weigh against the entry of default judgment is particularly significant, as courts often treat these as the most important factors.") (citing cases).

"If the court determines that the allegations in the complaint are sufficient to establish liability, it must then determine the 'amount and character' of the relief that should be awarded." *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010) (quoting 10A Charles Alan Wright *et al.*, Fed. Prac. and Proc. § 2688, at 63 (3d ed. 1998)). However, a court may decline to enter default judgment if a party's claim is legally insufficient. *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992); *Aldabe*, 616 F.2d at 1092-93

("Given the lack of merit in appellant's substantive claims, we cannot say that the district court abused its discretion in declining to enter a default judgment in favor of appellant").

## III. Discussion

Before it may evaluate the *Eitel* factors to determine whether default judgment should be entered, the Court must first determine whether it properly has jurisdiction in this matter.

### A. Jurisdiction

Federal courts are courts of limited jurisdiction and their power to adjudicate is limited to that granted by Congress. *United States. v. Summer*, 226 F.3d 1005, 1009 (9th Cir. 2000). A district court properly exercises diversity jurisdiction over a matter where the amount in controversy "exceeds the sum or value of $75,000, …and is between citizens of different states, or citizens of a State and citizens or subjects of a foreign state…" 28 U.S.C. § 1332(a)(1)-(2). Section 1332 requires complete diversity, i.e., that "the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 67-68 (1996). The burden of proving the amount in controversy depends on the allegations in the plaintiff's complaint. *Lowdermilk v. U.S. Bank Nat'l Ass'n.*, 479 F.3d 994, 998-1000 (9th Cir. 2007).

Here, Plaintiff is a Texas corporation with its principal place of business in Texas. (Doc. 1 ¶ 1). A corporation is deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 94 (2005) (citing 28 U.S.C. § 1332(c)(1)). Thus, Plaintiff is a citizen of Texas.

Defendants are alleged to be citizens of California. Plaintiff alleges Olaguez, Inc., is a corporation organized and existing under the laws of California, with its principal place of business in the County of Kern, California. (Doc. 1 ¶ 6). Plaintiff also alleges Johnny Olaguez is a California resident. *Id.* ¶ 7.

As Plaintiff is a citizen of Texas and Defendants are citizens of California, complete diversity of citizenship exists. Further, the amount in controversy alleged in Plaintiff's complaint is $130,815.85, (Doc. 1 at 8), so the jurisdictional amount-in-controversy requirement is met. Therefore, the Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

**B. Procedural Requirements**

Before a default judgment may be entered, Plaintiff must satisfy the procedural requirements set forth in Rule 55 of the Federal Rules of Civil Procedure. "A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared." Fed. R. Civ. P. 55. That restriction does not operate here. Plaintiff's counsel attests that "Defendants are neither a minor nor an incompetent person." (Doc. 16 ¶ 4). Further, counsel attests based upon information and belief that Defendant Johnny Olaguez is neither in a military servicemember nor otherwise exempted under the Soldier's and Sailor's Civil Relief Act of 1940. *Id.* ¶ 7.

Separately, the Court must be satisfied that service of process on the party against whom default is requested is adequate. *J & J Sports Prods., Inc. v. Singh*, No. 1:13-cv-1453-LJO-BAM, 2014 WL 1665014, at *2 (E.D. Cal. Apr. 23, 2014) (citation omitted); *see Mason v. Genisco Tech. Corp.*, 960 F.2d 849, 851 (9th Cir. 1992) (if a party "failed to serve [defendant] in the earlier action, the default judgment is void and has no res judicata effect in this action.").

Rule 4 of the Federal Rules of Civil Procedure governs service of process in this action. "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *Direct Mail Specs., Inc., v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988) (quoting *United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984)). However, "without substantial compliance with Rule 4, 'neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction.'" *Id.* (quoting *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986)).

Here, counsel for Plaintiff filed waivers of service on behalf of each Defendant reflecting that an attorney, Alfred Hernandez, waived service effective December 24, 2025. (Docs. 8, 9). At the motion hearing, although Defendant Johnny Olaguez stated he no longer is in communication with Mr. Hernandez, he did not challenge that, at the time the service waivers were executed, Mr. Hernandez was authorized to waive service on Defendants' behalf. Moreover, Defendant Johnny Olaguez acknowledged at the motion hearing that he received a copy of the summons and complaint and Plaintiff's motion for default judgment. On this record,

the Court finds that service of process as to Defendant Johnny Olaguez was proper pursuant to Federal Rule of Civil Procedure 4. *See* Fed. R. Civ. P. 4(d)(4) ("When a plaintiff files a waiver, proof of service is not required and these rules apply as if a summons and complaint had been served at the time of filing the waiver.").

Regarding Defendant Olaguez Inc., the Court takes note that Defendant Johnny Olaguez, who acknowledged receiving the summons, complaint, and Plaintiff's motion papers, is the President of Olaguez Transport. On this record, the Court finds that service of process on Olaguez Transport was proper pursuant to Federal Rules of Civil Procedure Rule 4. *See* Fed. R. Civ. P. 4(d)(4). Further, Defendant Johnny Olaguez appeared at the motion hearing, was sworn by the Court, and made representations to the Court about, among other things, his intent to defend the action. Such a general appearance where the party "comes into court and submits to the jurisdiction of the court," manifests "knowledge of the suit and an intention" to defend, and does not dispute personal jurisdiction, constitutes a waiver of any defect in service of process or personal jurisdiction. *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986); *see United States v. Vacant Land*, 15 F.3d 128, 131 (9th Cir. 1994) (finding service defects waived where party "appeared at the district court for the purpose of arguing his position that he should be allowed to proceed" in the action without reservation and without a claim that he had not received service or process).

Based on the foregoing, the undersigned concludes the Court has jurisdiction over Defendants.

### C. Evaluation of the *Eitel* Factors in Favor of Default Judgment

For the reasons discussed herein, the undersigned finds that the *Eitel* factors weigh in favor of granting default judgment.

#### 1. Possibility of Prejudice to Plaintiff

The first *Eitel* factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered, and such potential prejudice to the plaintiff weighs in favor of granting a default judgment. *PepsiCo, Inc. v. Cal. Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal.

2002). Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover against that defendant. *Id*.

Here, Plaintiff would be prejudiced if default judgment were not granted because, absent entry of a default judgment, Plaintiff will be without recourse against Defendants given their failure to perform under the parties' contract to pay the value of Plaintiff's incurred losses, costs and expenses related to the bonds issued by Plaintiff on behalf of Olaguez Transport. *See Vogel v. Rite Aid Corp*., 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014). Thus, this factor weighs in favor of granting default judgment.

**2. Merits of Plaintiff's Claims and the Sufficiency of the Complaint**

The second and third *Eitel* factors require the Court to consider the causes of action alleged in the complaint. *Eitel*, 782 F.2d at 1471–72; *see Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010) (under an *Eitel* analysis, the second and third factors are often analyzed together); *Mnatsakanyan*, 2013 WL 10155707, *10 (C.D. Cal. May 14, 2013) (noting that courts often treat these two factors "as the most important" in an *Eitel* analysis)

Here, Plaintiff's principal cause of action is its breach of contract claim. The second, third, and fourth causes of action asserted in the complaint are forms of relief based on Defendants' alleged breach of contract, not independent legal claims. Further, none of the purported claims or relief implicated in these so-called causes of action are addressed by Plaintiff in its motion papers. By failing to present argument in support of entry of default judgment on these other causes of action, Plaintiff has waived its entitlement to relief in default on those claims. *E.g., Block v. Narwal*, No. 1:22-cv-00597-ADA-EPG, 2022 WL 1745502, at *2 (E.D. Cal. Dec. 6, 2022) ("As an initial matter, while Plaintiff's complaint asserts a cause of action under California's Health and Safety Code, Plaintiff's motion makes no argument as to this cause of action and he has thus failed to demonstrate entitlement to a default judgment."), *F&R adopted*, 2023 WL 2024995 (Feb. 15, 2023); *Finlayson v. Cnty. of Riverside*., No. EDCV 15-2660 DSF (KKx), 2020 WL10692681, at * 5 (C.D. Cal. Mar. 30, 2020) (same). Accordingly, the undersigned considers only the merits of Plaintiff's breach of contract claim. *Cf. Nobland Int'l, Inc.v. Dream Apparel, Inc*., No. 2:19-cv-07922-SB-SK, 2021 WL 4772528, at *2 & n.1 (C.D.

Cal. May 7, 2021) (on motion for default judgment, analyzing only the merits of "the two claims on which Plaintiff's request for damages depend").

The GIA contains a choice-of law clause providing that "this agreement shall be governed by and construed in accordance with the laws of the state of Texas." (Doc. 1 at 18). "Federal courts sitting in diversity look to the law of the forum state when making choice of law determinations." *Hoffman v. Citibank, N.A.*, 546 F.3d 1078, 1082 (9th Cir. 2008) (citing *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005)). As this action is before this Court on the basis of diversity jurisdiction, California's choice of law rules apply. California courts will enforce the chosen state's law where (1) "the chosen state has a substantial relationship to the parties or their transaction," or (2) "there is any other reasonable basis for the parties choice of law." *Nedlloyd Lines B.V. v. Superior Ct.*, 3 Cal. 4th 459, 466 (Cal. 1992). A "substantial relationship" exists where a party's incorporation or organization is under the laws of the forum state, and a "reasonable basis" for enforcing a contract's choice of law provision exists when at least one party resides in the state. *Id*.

Here, notwithstanding that Plaintiff's arguments in support of its motion for default judgment refer to and apply California law (Doc. 16 at 3), the undersigned finds based on application of both the "substantial relationship" test and the "reasonable basis" test articulated by the California Supreme Court in *Nedlloyd Lines B.V.* that Texas law governs the parties' contract given Plaintiff both is incorporated under the laws of Texas and operates its principal place of business and headquarters in Texas. Moreover, "the standards for breach of contract are essentially the same for both California and Texas" and, accordingly, "no fundamental public policy of California's would be violated by applying Texas law." *Phillips 66 Co. v. Petros Rai Stations, LLC*, No. 2:15-cv-0368-TLN-KJN, 2016 WL 1654957, at *5 (E.D. Cal. Apr. 27, 2016) (recommending grant of default judgment and finding the parties' choice-of-law provision applying Texas law to claims asserted pursuant to the terms of a guarantee agreement should be enforced), *F&R adopted*, 2016 WL 10679252 (June 7, 2016).

To succeed on its claim for breach of contract under Texas law, Plaintiff must establish (1) a valid contract, (2) performance or tendered performance by plaintiff, (3) defendant's breach,

and (4) damages. *See Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citing *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App. 2001)). "Contract claims generally accrue when the contract is breached." *Hoover v. Gregory*, 835 S.W.2d 668, 677 (Tex. App. 1992) (citation omitted). "A breach occurs when a party fails to perform a duty required by the contract." *Smith Int'l*, 490 F.3d at 387 (*quoting Hoover*, 835 S.W.2d at 677).

Accepting Plaintiff's well-pleaded factual allegations as true, Plaintiff has established that Defendants breached a valid contract. According to the allegations, Plaintiff and Defendants entered into the GIA, which obligated Defendants to indemnify Great Midwest Insurance Company "against any and all loss whatsoever" related to the bonds, and to deposit immediately upon demand collateral in an amount satisfactory to the surety. (Doc. 1, Exhibit A). Plaintiff performed its obligations under the parties' contract. (Doc. 1 ¶ 25). Defendant Johnny Olaguez is an adult capable of contracting and consented to personally guarantee Defendant Olaguez Transport's performance. (Doc. 1, Exhibit A at Signature Page). There is no evidence to suggest that Defendants did not intend to be legally bound by the GIA and its terms. The complaint further alleges that Defendants breached their indemnification obligations to Plaintiff and proximately caused Plaintiff to suffer damages. (Doc. 1 ¶¶ 22-26).

Accordingly, because Plaintiff has sufficiently alleged a breach of contract claim against both Defendants, the second and third *Eitel* factors favor the grant of default judgment.

**3. The Sum of Money at Stake in the Action**

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176. The amount at stake must not be disproportionate to the harm alleged. *See Lehman Bros. Holdings. Inc. v. Bayporte Enters. Inc.*, 2011 WL 614079, at *7 (N.D. Cal. Oct. 7, 2011). Default judgment is generally disfavored when the sum of money at stake is either too large or unreasonable in light of a defendant's actions. *G & G Closed Circuit Events, LLC v. Nguyen*, 2012 WL 2339699, *2 (N.D. Cal. May 30, 2012). Generally, courts have found that this factor presents no barrier to default judgment even when millions of dollars were at stake, as long as the potential damages

were proportional to the harm alleged. *Global Commodities Trading Group, Inc., et al. v. Beneficio De Arroz Choloma, S.A., et al.*, No. 2:16-cv-1045-TLN-CKD, 2022 WL 1439499, at *5 (E.D. Cal. May 6, 2022) (citations omitted), *F&R adopted*, 2022 WL 2818658 (July 19, 2022).

Plaintiff seeks to recover a total of $141,224.35. (Doc. 16-3 at 2). Plaintiff has provided adequate evidence in the form of documentation and declarations to support its claim in the amount of $141,224.35. (*See* Doc. 16). This amount represents $130,815.85 in payments made to subcontractors and suppliers in connection with claims paid on bonds issued by Plaintiff on behalf of Defendants, consultants' fees incurred in connection with those claims less recovered amounts, and $9,654.00 in attorneys' fees and $754.50 in costs incurred in the investigation, analysis and enforcement of Plaintiff's rights under its surety bonds. (*Id.* ¶ 16). The GIA plainly requires Defendants to indemnify Plaintiff for any claims related to the surety bonds, as well as resulting liability incurred or expenses paid in Plaintiff's recovering or attempting to recover losses or expenses paid in connection with the bond. (Doc. 1, Exhibit A, ¶ 3 *et seq.*).

Accordingly, given that Defendants expressly contracted to remit to Plaintiff the money it seeks for Defendants' breach, that amount is proportionate to the harm caused by Defendants. This factor weighs in favor of granting default judgment.

**4. The Possibility of a Dispute Concerning Material Facts**

"[A]llegations in a well-pleaded complaint are taken as true following the clerk's entry of default." *Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005). Where a plaintiff has filed a well-pleaded complaint, the possibility of dispute concerning material facts is unlikely. *Landstar Ranger*, 725 F. Supp. 2d at 921-22.

Here, since Defendants are in default, all of Plaintiff's well pleaded factual allegations are taken as true. *TeleVideo Sys*., 826 F.2d at 918 (citing *Geddes*, F.2d at 560); *e.g., Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."). Since Plaintiff's factual allegations are presumed true in this context and Defendants failed to move to set aside the default, no factual dispute exists that would preclude the entry of default judgment. *Vogel v. Rite Aid Corp.*, 992 F.

Supp. 2d, 998, 1013 (C.D. Cal. 2014). Thus, this factor weighs in favor of granting default judgment.

**5. Whether the Default was Due to Excusable Neglect**

The sixth *Eitel* factor requires the Court to consider whether a defendant's default was due to excusable neglect. *PespiCo*, 238 F. Supp. 2d at 1177; *Eitel*, 782 F.2d at 1471-72. This factor implicates due process and whether a defendant is "given notice reasonably calculated to apprise them of the pendency of the action and be afforded opportunity to present their objection before a final judgment is rendered." *Phillip Morris USA, Inc. v. Castworld Productions*, 219 F.R.D. 494, 500 (C.D. Cal. 2003).

Upon review of the record, there is clear indication that the default was not the result of excusable neglect. Defendants were properly served, received the summons and complaint, and Defendant Johnny Olaguez appeared in Court for the hearing noticed on Plaintiff's motion for default judgment.[2] At the hearing, Defendant Johnny Olaguez expressed his intention to retain counsel. The Court admonished him of his duty as a pro se party to review and comply with the Court's Local Rules and to expeditiously file notice of attorney appearance if he intended to retain counsel. (Doc. 17). It is undisputed that Defendants received notice of the pendency of this action, the defaults entered against them, and Plaintiff's pending motion for default judgment and have chosen not to defend themselves. Accordingly, there is no indication that Defendants' default resulted from excusable neglect, and this factor favors entry of default judgment. *See Magic Leap*, *Inc., v. Tuc*, No. 17-cv-00264 NC, 2017 WL 10456729, at *3 (N.D. Cal. Aug. 17, 2017).

**6. The Strong Policy Favoring a Decision on the Merits**

The seventh Eitel factor emphasizes the "general rule that default judgments are ordinarily disfavored." *Eitel*, 782 F.2d at 1472. "Cases should be decided upon the merits whenever

---

[2] Although Defendant Johnny Olaguez attended the motion hearing on May 29, 2026, Defendant Olaguez Transport has not appeared and was not present at the motion hearing, notwithstanding Johnny Olaguez's status as Olaguez Transport's president. *See In re Bigelow*, 179 F.3d 1164, 1165 (9th Cir. 1999) (a corporation can be represented only by a licensed attorney); E.D. Cal. Local Rule 183(a) (same).

reasonably possible." *Id.* (citing *Pena v. Seguros La Comersial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)). Defendants' refusal to defend themselves in this action renders a decision on the merits virtually impossible. This factor does not weigh against default judgment.

* * * * *

For the forgoing reasons, the undersigned finds that on balance, the *Eitel* factors favor entry of default judgment on Plaintiff's breach of contract claim. Therefore, the undersigned will recommend that the Court grant Plaintiff's motion for default judgment on this claim only.

**D. Relief**

Having determined that entry of default judgment is warranted, the undersigned must now consider Plaintiff's requested relief. The undersigned does not take Plaintiff's factual allegations concerning damages as true. *TeleVideo*, 826 F.2d at 917-18. Rather, Plaintiff must offer proof of the damages sought. *Id.* Plaintiff seeks $130,815.85 in damages based on the nine claims it has paid out on the payment bond issued to Olaguez Transport and $9,654.00 in attorneys' fees and $754.50 in costs incurred.

**1. Damages**

According to the declaration of Plaintiff's claims counsel, the outstanding balance due on Defendants' indebtedness under the GIA less the amount Plaintiff has recovered on one of the bonds issued is $130,815.85, reflecting payments made to subcontractors and suppliers in connection with the claims paid on bonds issued by Plaintiff and consultants' fee incurred in connection with such claims. (Mercandetti Decl. ¶¶ 10-15 & Exhibit D). This uncontroverted evidence is sufficient to establish Plaintiff's entitlement to the damages claimed in the amount of $130,815.85.

**2. Attorneys' fees**

Texas law governs the question of whether Plaintiff is entitled to recover attorneys' fees and costs. *See BMO Bank, N.A., v. Bullet Carrier Inc.*, No. 1:26-cv-04671-EGC, 2026 WL 2925730, at *8 (E.D. Cal. Sept. 29, 2026) (granting default judgment; noting that a contract's choice-of-law provision controls the law applicable to a prevailing party's claim to attorney's fees) (citing *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) & *Alaska Rent-A-Car, Inc. v.*

*Avis Budget Group, Inc*., 738 F.3d 960, 973 (9th Cir. 2013)). Texas courts enforce contractual provisions governing a party's entitlement to reasonable attorneys' fees. *See Phillips 66 Co.*, 2016 WL 1654957, at *9 (citing *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009), for the proposition that parties may specifically contract for a broader or narrower attorneys' fees provision than the default rule laid out by statute); accord *Range v. Calvary Christian Fellowship*, 530 S.W.3d 818, 838 (Tex. App. 2017) (enforcing contractual provision permitting prevailing party in action to enforce rights to recover reasonable attorney's fees).

Texas courts refer to the lodestar method of calculating reasonable attorneys' fees in a breach of contract case. *E.g.*, *Range*, 530 S.W.3d at 840. "The starting point for determining a lodestar fee award is the number of hours 'reasonably expended on the litigation.'" *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 762 (Tex. 2012) (citation omitted). "The party applying for the award bears the burden of proof" of establishing facts relevant to the lodestar calculation: "(1) the nature of the work, (2) who performed the services and their rate, (3) approximately when the services were performed, and (4) the number of hours worked." *Id.* at 762-63 (internal citation omitted). The reasonable number of hours is multiplied by an hourly rate deemed reasonable by the Court.

Here, Plaintiff seeks to recover $9,654.00 in attorneys' fees and costs associated with investigating the claims made by Defendant Olaguez Transport's subcontractors and suppliers and bringing this suit for Defendants' breach of contract. The contract plainly provides Defendants will be liable for all fees and costs associated with investigating claims and enforcing the contract provisions. (Doc. 16-2 at 3). And by obtaining a default judgment against Defendants, Plaintiff is a prevailing party entitled to an award of attorney's fees.

Plaintiff supports it's claim to attorneys' fees and costs with the declaration of Plaintiff's claims counsel, who represents that as of April 2026, Plaintiff has paid attorneys' fees of $9,654.00 associated with the Olaguez Transport matter to Watt, Tieder, Hoffar and Fitzgerald LLP ("Watt Tieder"). Watt Tieder's invoices total $9,654 in attorneys' fees and $754.50 in costs for a total of $10,408.50. The invoices provided detail the hours billed, the hourly rates, and a

detailed description of the work conducted. The Court has reviewed the invoices and finds that the hours billed were reasonable and necessary to bring the underlying action. Watt Tieder's paralegal rate charged to plaintiff was $220.00 per hour for less than an hour of work. (Doc 16-2 at 71). The attorney billing rates range from $310.00 per hour for a first-year associate and $385 per hour for a partner. *Id.* These hourly rates are reasonable and comparable to prevailing fees in other Texas cases reviewed by the undersigned. *E.g., Salt and Light Energy Equip., LLC v. Origin Bancorp, Inc.*, No. 3:22-cv-00654-N, 2026 WL 1067475, at *3 (N.D. Tex. Apr. 20, 2026) (finding hourly rates of between $400 and $750 "consistent with the prevailing market rates for attorneys with similar levels of experience in the Dallas-Fort Worth legal community"); *Mantzuranis v. State Farm Lloyds*, No. 3:21-cv-01486-M, 2022 WL 17406391, at *3 (N.D. Tex. Dec. 2, 2022) (finding hourly rates of $399 for partners, $299 for associates, and $175 for paralegals reasonable).

Based on the evidence presented, recovery of these attorney fees and costs[3] related to the litigation is appropriate under the terms of the contract. (Doc. 16-2, Exhibit A. ¶ 3 *et seq*.).

**IV. <u>Conclusion and Recommendation</u>**

The Clerk of the Court is DIRECTED to assign a U.S. district judge to this action.

It is HEREBY ORDERED that Plaintiff Great Midwest Insurance Company SHALL TRANSMIT a copy of these findings and recommendations to Defendants at their last known address and promptly file proof of service.

And or the reasons set forth above, it is HEREBY FOUND and RECOMMENDED that:

1. Plaintiff's motion for default judgment be GRANTED IN PART as to Plaintiff's breach of contract claim against Defendants Johnny Olaguez and Olaguez Inc.;
2. Plaintiff's motion for default judgment be DENIED in all other respects;
3. Plaintiff be awarded $130,815.85 in damages as to the breach of contract claim, $9,654.00 in attorneys' fees, and $754.50 in costs against Defendants.
4. The Clerk of Court be directed to close this case.

---

[3] Plaintiff incurred costs related to a litigation support vendor and a process server.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within 14 days after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any failure by a party to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **October 1, 2026**

UNITED STATES MAGISTRATE JUDGE